UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

GLD3, LLC and SNOOK-9 REALTY. INC.,

                      Plaintiffs,

        -against-

Azem Albra, et al.,

                      Defendants.

-----------------------------------------------------------------X

21-cv-11058

**OPINION & ORDER**

**VICTORIA REZNIK, United States Magistrate Judge:**

Plaintiffs GLD3 LLC. And Snook-9 Realty, Inc, sued Defendants Azem Albra, the Town of Fishkill, the Town Board of the Town of Fishkill, and its board members in December 2021. (ECF No. 1). The lawsuit alleges that Defendants illegally deprived Plaintiffs of their substantive and procedural due process rights— as well as their equal protection rights—when Defendants prevented Plaintiffs from developing property that they owned in the Town of Fishkill.

Before the Court is the parties' dispute over whether Defendants can assert attorney-client privilege and the work-product privilege over documents and communications with the former Town Attorney Brian Nugent and his law firm. (ECF No. 76 at 6) (internal quotation marks omitted). Plaintiffs also seek a deposition of Mr. Nugent relating to those communications. For the reasons explained below, Plaintiffs' Motion to Compel is **GRANTED** in part and **DENIED** in part.

## BACKGROUND

Plaintiffs are corporate landowners seeking to develop their property in Fishkill, New York, into the "Continental Commons," a "commercial, social and educational center with a restaurant, shops, and inn." (ECF No. 4 at ¶¶ 15, 16, 28). Defendants are the Town of Fishkill, the Town Board of Fishkill, and duly elected members of that body, including the Town Supervisor. (*Id*. at ¶¶ 17-23). Around October 2007, an archaeological investigation revealed a burial area—potentially dating back to the Revolutionary War—in the southwest corner of the property. (ECF No. 1 at ¶¶30-31). Plaintiffs still planned to develop the property but planned to preserve the burial area, provide public access to it, and place a marker honoring "the fallen Revolutionary War soldiers and those who continue to serve this great nation." (*Id*. at ¶36).

As part of their effort to develop their parcels of land, Plaintiffs filed applications to extend water and sewer services to Continental Commons. (ECF No. 76 at 3). Around January 2020, amid Plaintiffs' application for water and sewer rights for their property, Plaintiffs allege that the Town Supervisor—through a town board member—offered to approve Plaintiffs' application for water and sewer extensions *if* Plaintiffs donated the burial area to the town. (*Id*. at 100). Plaintiffs rejected this offer. (*Id*.) The public hearing before the Town Board to vote on this application was held in September 2020, during which the Town Board denied Plaintiffs' application. (*Id*.)

Plaintiffs then filed an Article 78 proceeding to challenge Defendants' denial of their application in January 2021. (*Id.* at ¶ 127). Shortly thereafter, Plaintiffs allege that the Town Attorney (Brian Nugent) contacted them and offered to get their water and sewer rights application approved in exchange for the burial area and a promise that Plaintiffs do not develop any part of their land for another 10 years. (*Id.* at ¶ 128). Plaintiffs again rejected this offer. *Id.* When deposed about whether he instructed the Town Attorney to make this offer to Plaintiffs, Town Supervisor Albra denied any knowledge of the offer. (ECF No. 76-6 at 26).

Plaintiffs now seek to compel documents and communications between Defendants and the former Town Attorney Brian Nugent "related to (1) Plaintiffs' petitions to extend Blodgett water and sewer districts and Defendants' denial of the same and/or (2) the so-called offers to Plaintiffs seeking to exchange the water and sewer services for the burial area." (ECF No. 76 at 6) (internal quotation marks omitted). Plaintiffs also seek a deposition of Mr. Nugent in connection with the alleged *quid pro quo* offer made to Plaintiffs.

In connection with Plaintiffs' motion, the Court ordered that all documents being withheld by Defendants be submitted to the Court for an *in-camera* inspection. (ECF No. 82).

**DISCUSSION**

I. **Legal Standard**

A. **Attorney-Client Privilege**

Under federal common law,[1] "the attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Krug*, 868 F.3d 82, 86 (2d Cir. 2017) (alteration omitted); *accord In re Spalding Sports Worldwide*, 203 F.3d 800, 805 (Fed. Cir. 2000). "The underlying purpose of the attorney-client privilege is 'to encourage full and frank communication between attorneys and their clients.'" *Krug*, 868 F.3d at 86 (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). "As a result, the attorney-client privilege creates a rule of confidentiality that 'recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.'" *Id.* (quoting *Upjohn*, 449 U.S. at 389). "In order to balance this protection of confidentiality with the competing value of public disclosure, however, courts apply the privilege only where necessary to achieve its purpose and construe the privilege narrowly because it renders relevant information undiscoverable." *Id.* The party claiming the privilege has the burden of establishing the essential elements of the privilege. *Id.*

---

[1] Where, as here, subject matter jurisdiction is grounded on a federal question, privilege issues are governed by federal common law. *See* Fed. R. Evid. 501.

But the attorney-client privilege protects "only legal advice, not economic, business, or policy advice." *Durling v. Papa John's Int'l, Inc.*, No. 16CIV3592CSJCM, 2018 WL 557915, at *3 (S.D.N.Y. Jan. 24, 2018) (quoting *Fox News Network, LLC v. U.S. Dep't of Treasury*, 911 F. Supp. 2d 261, 271 (S.D.N.Y. 2012)). Indeed, the test for whether a communication that contains both legal and non-legal advice is privileged is "whether the predominant purpose of the communication is to render or solicit legal advice." *Durling,* 2018 WL 557915, at *3 (quoting *In re Cnty. of Erie*, 473 F.3d 413, 420 (2d Cir. 2007)). When "an attorney is consulted in a capacity other than as a lawyer, as (for example) a policy advisor, media expert, [or] business consultant . . . that consultation is not privileged." *Erie,* 473 F.3d at 421. That is because such consultations do not always implicate the "interpretation and application of legal principles to guide future conduct or to assess past conduct" central to the privilege. *Id.* at 419. Instead, the attorney-client privilege "requires a lawyer to rely on legal education and experience to inform judgment." *Id.*

Although whether a communication between client and counsel is privileged often arises in the context of "communications to and from corporate in-house lawyers who also serve as business executives," courts have also considered privilege issues as they relate to local government attorneys. *Erie,* 473 F.3d at 419. Indeed, in "civil suits between private litigants and government agencies, the attorney-client privilege protects most confidential communications between

government counsel and their clients that are made for the purpose of obtaining or providing legal assistance." *Id.* at 418.

### B. Work-Product Doctrine

Additionally, the work-product doctrine holds that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A). The "party asserting the privilege bears the burden of demonstrating that the documents or materials were prepared in anticipation of litigation." *Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 74 (S.D.N.Y. 2010) (citing *United States v. Constr. Prod. Rsch., Inc.*, 73 F.3d 464, 473 (2d Cir. 1996)).

But "[t]he mere possibility of litigation is insufficient to obtain work-product protection." *Gucci Am. Inc.,* 271 F.R.D. at 74 (quoting *Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*, No. 03CIV.5560(RMB)(HBP), 2007 WL 473726, at *4 (S.D.N.Y. Feb. 14, 2007)). Rather, the party asserting the protection must show that the document was prepared in anticipation of litigation by demonstrating that "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998). More precisely, the "document at issue must have been prepared with an eye to some specific litigation." *Montesa v. Schwartz*, No. 12CIV6057CSJCM, 2016 WL 3476431, at *8 (S.D.N.Y. June 20, 2016). Thus, the work-product doctrine "requires a more immediate showing than the remote possibility of litigation." *Id.* The

"litigation must at least be a real possibility at the time of preparation." *Id.* In addition, the work-product doctrine does not apply to "documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation." *Id.* (quoting *Adlman,* 134 F.3d at 1202).

## II. Most But Not All of the Disputed Documents are Protected from Disclosure

### A. Documents Protected from Disclosure:
Document Nos. 6676-79, 6681-6706, 6740-42, 6743-51, 6777-81,[2] 7003-04, 7007-09, 7029, 7074-75[3], 7090-93[4], 7115-16, 7135-36, 7137-38[5], 7145-49, 7150-53, 7214-16, 7219-20[6], 7225, 7280, 7285-86, 7300-01, 7305, 7895-99, 7972, 7975-76

After reviewing the documents *in camera,* the Court finds that the documents listed above are protected by the attorney-client privilege. The majority of the documents contain email correspondence between the Town Attorney and members of the Town Board (and others similarly situated) requesting or providing legal

---

[2] Defendants contend that Document Nos. 6777-81 is protected from production by the work product doctrine. Per Defendants' privilege log, this document is a draft planning board resolution relating to the water permit for Continental Commons. This document was not created "in anticipation of litigation," as required for work product protection. But it was a document shared with members of the Town Board and its agents in a confidential manner and conceivably contains legal impressions on the propriety of a Town Board resolution. *Erie,* 473 F.3d at 422 ("It is to be hoped that legal considerations will play a role in governmental policymaking. When a lawyer has been asked to assess compliance with a legal obligation, the lawyer's recommendation of a policy that complies (or better complies) with the legal obligation . . . is legal advice.")

[3] There is a typo in the privilege log. The log provided by Defendants lists 7074 twice, but the actual documents contain 7074 and 7075.

[4] The privilege log does not include Doc. No. 7093, but this document is attached to two other documents that are included on the log. Further, Doc. No. 7093 appears to be a continuation of the correspondence captured by the previous two documents. As such, the Court is including it here.

[5] As in the previous footnote, the privilege log does not include Doc. No. 7138, but this document is attached to another document that is included on the log. Further, Doc. No. 7138 appears to be a continuation of the correspondence captured by the previous document. As such, the Court is including it here.

[6] As in the previous footnote, the privilege log does not include Doc. No. 7220, but this document is attached to another document that is included on the log. Further, Doc. No. 7220 appears to be a continuation of the resolution captured by the previous document. As such, the Court is including it here.

advice in connection with the pending petitions, including proposed comments to the project.[7] Other documents are draft resolutions prepared by the Town Attorney and shared with the Board for review and approval.[8] There is no argument by either party that these emails were either disclosed, thereby altering their seemingly apparent confidential nature, or that they were intended to be public, so as not to make them confidential. At their core, the "predominant purpose" of these emails was either to "solicit or render" legal advice from the Town Attorney. *Durling,* 2018 WL 557915, at *3. The communications often called for the "interpretation and application of legal principles to guide future conduct," principally contemplated by the attorney-client privilege. *Erie,* 473 F.3d at 421. As a result, the Court finds that the privilege covers these documents.

### B. <u>Document to be produced in redacted form</u>:  Document No. 7694

The document that is arguably the most relevant to Plaintiffs' *quid pro quo* argument is Document 7694 – a one-page sheet memorializing Town Attorney Nugent's notes from a conversation with plaintiffs' counsel. According to Plaintiffs, the Town Attorney (Brian Nugent) contacted them and offered to get their water and sewer rights application approved in exchange for the burial area and a promise that Plaintiffs do not develop any part of their land for another 10 years. (ECF No. 5 at ¶ 128). It appears that Defendants have produced most of the

---

[7] These include the following Document Nos.: 6676-79, 6681-6706, 6740-42, 6743, 6752, 7003-04, 7007-09, 7029, 7074-75, 7090-93, 7115-16, 7135-36, 7137-38, 7145-49, 7150-53, 7214-16, 7219-20, 7225, 7280, 7285-86, 7300-01, 7305, 7895-99, 7972, 7975-76, 7895-99.

[8] These include Document Nos. 6744-6751 and 6777-6781. Although the Court finds that these documents are covered by the attorney-client privilege, if any of these drafts are the final version of the resolution adopted and made public by the Board, then they should be produced.

contents of this document, with a small portion redacted. (ECF No. 77 at 3-4; ECF No. 78-2). So, the only dispute is whether this document should be produced in unredacted form.

Having reviewed the unredacted version of the document, the Court finds that the last entry should be redacted but only partially. The first part of the entry is not privileged, as it only sets forth the date of a conversation and with whom the Town Attorney communicated. Those facts are not privileged or subject to attorney work product. Indeed, even a privilege log must describe the date of any attorney-client communication, the persons involved in that communication, and the general subject matter discussed. But the contents of that communication, which follows the entry date and the description of the person to whom Mr. Nugent communicated, are subject to attorney-client privilege and should remain redacted.

C. **Document to be produced in its entirety**: **Document No. 7915-17**

Document Nos. 7915-17 appear to be emails attaching resolutions to set a public hearing on the water district extension and a "Survey Discription [*sic*]." These documents appear only to forward the attachments and information. There are no legal impressions, analysis, or solicitation of any similar advice from counsel. Thus, they should be produced. But it is unclear from the parties' submissions whether the attachments to this email are on the privilege log. If the attachments contained therein are free from comments and other redline edits and represent the final resolutions adopted by the Board and made public, then those should also be produced.

### III. Plaintiffs are Entitled to Additional Discovery about Mr. Nugent's Conversation with Plaintiffs' Counsel (the Alleged *Quid Pro Quo*), But Not Through a Deposition.

Lastly, Plaintiffs request a deposition of former Town Attorney Nugent in connection with his role in making the alleged *quid pro quo* as outlined in Plaintiffs' motion papers. While obtaining "discovery from opposing counsel is disfavored," *In re Chevron Corp.,* 749 F. Supp. 2d 141, 159 (S.D.N.Y. 2010), "that the proposed deponent is a lawyer does not automatically insulate him or her from a deposition." *In re Subpoena Issued to Dennis Friedman,* 350 F.3d 65, 72 (2d Cir. 2003). Indeed, "the request to depose a party's attorney must be weighed by balancing, generally speaking, the necessity for such discovery in the circumstances of the case against its potential to oppress the adverse party and to burden the adversary process itself." *Madanes v. Madanes,* 199 F.R.D. 135, 151 (S.D.N.Y. 2001). To that end, the *Friedman* Court laid out the following factors to consider in assessing whether to permit the deposition of an opposing counsel: 1) the need to depose the lawyer; 2) the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation; 3) the risk of encountering privilege and work product issues, and; 4) the extent of discovery already conducted.

As to the first factor – the need to depose the lawyer – the threshold questions are (1) "whether the information sought may be obtained from another source," *Sec. & Exch. Comm'n v. Contrarian Press*, No. 16-CV-6964 (VSB), 2020 WL 7079484, at *4 (S.D.N.Y. Dec. 2, 2020), and (2) "the relevance of the information sought." *Dominion Res. Servs., Inc. v. Alstom Power, Inc.*, No. 3:16CV00544(JCH), 2017 WL 3228120, at *3 (D. Conn. July 31, 2017). Additionally, Courts look to

whether the moving party has made "reasonable efforts to explore a reasonable number of these alternative sources and has not obtained anything nearly as particularized as what the primary [] lawyer could reasonably be expected to offer." Ca*lvin Klein Trademark Tr. v. Wachner*, 124 F. Supp. 2d 207, 211 (S.D.N.Y. 2000).

Although Plaintiffs have not expressly provided the topics on which they seek to depose Mr. Nugent, their motion papers suggest they would at least want to inquire into "(1) Plaintiff's petitions to extend Blodgett water and sewer districts and Defendants' denial of the same and/or (2) the so-called 'offers' to Plaintiffs seeking to exchange the water and sewer services for the burial area." (ECF No. 76-1 at 6). As to the first topic, this information is easily obtained from a source other than Mr. Nugent. The Town's denial of the petitions is a matter of public record, and their reasons for denial would more appropriately be sought from the testimony of those Board members directly. Nor have Plaintiffs provided any evidence suggesting that they did not receive the information they needed. As such, there is no apparent need to depose the Town Attorney to inquire further about it.

But as to the so-called *quid pro quo* "offers" to Plaintiffs allegedly made by Mr. Nugent—seeking to exchange the water and sewer services for the burial area—that information seems most squarely located with Mr. Nugent. In particular, Plaintiffs allege that Mr. Nugent made the alleged offer in a phone conversation with Plaintiffs in or around the fall of 2021.[9] (ECF No. 76-6 at 26).

---

[9] Plaintiffs refer to the conversation taking place in 2020, but a review of the relevant document shows that the conversation likely took place in 2021.

Plaintiffs have already deposed the Town Board member who allegedly made the initial offer and the Town Supervisor, who denied telling Mr. Nugent to make such an offer. Additionally, the information sought is plainly relevant to Plaintiffs' claims, as identifying who made what offers to Plaintiffs is central to their case. Plaintiffs have explored a reasonable number of options as well, in so far as they have deposed two witnesses on the topic and sought responsive paper discovery. Thus, the first factor favors granting a deposition, at least as to the purported *quid pro quo*.

Next, the Court is tasked with evaluating the "lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation." *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 72 (2d Cir. 2003). Courts are particularly hesitant to allow depositions of opposing counsel in evaluating this factor because "even if limited to relevant and non-privileged information, [they] are likely to have a disruptive effect on the attorney-client relationship and on the litigation." *Sec. & Exch. Comm'n v. Contrarian Press*, No. 16-CV-6964 (VSB), 2020 WL 7079484, at *4 (S.D.N.Y. Dec. 2, 2020) (quoting *U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, No. 97CV06124(JGK)(THK), 2000 WL 1253262, at *2 (S.D.N.Y. Sept. 1, 2000)). Although courts seem to disfavor depositions of attorneys generally, there is a distinction between those providing legal services to a client before litigation and those serving as trial counsel. *See KOS Bldg. Grp., LLC*, 2020 WL 1989487, at *5 (determining that where an attorney is acting as a party's lawyer "weighs against allowing" the deposition); *Cf U.S. Fid. &*

*Guar. Co. v. Braspetro Oil Servs. Co.*, No. 97CIV.6124(JGK)(THK), 2000 WL 1253262, at *2 (S.D.N.Y. Sept. 1, 2000) (emphasizing that such considerations are most pronounced where the deposition targets trial counsel).

Here, this factor also supports granting the deposition. To the extent Courts consider the potential disruptive effect on the attorney-client relationship, such a concern is not at play here. As far as the Court can tell, Mr. Nugent is the former Town Attorney (ECF Nos. 76-1 at 6; 77 at 2) and does not appear as counsel of record to this litigation. Because Mr. Nugent neither works on behalf of the Town nor represents them here, there is no ongoing attorney-client relationship to disrupt between the parties.[10] As such, this second factor supports granting the deposition.

But the third factor favors denying the deposition, as there is a non-negligible "risk of encountering privilege and work-product issues." *Friedman*, 350 F.3d at 72. "Because every *Friedman* case entails at least some risk of encountering such issues," analyzing this factor requires "a sensitive consideration of the extent to which substantial privilege issues are raised." *Sec. & Exch. Comm'n v. Contrarian Press*, No. 16-CV-6964 (VSB), 2020 WL 7079484, at *5 (S.D.N.Y. Dec. 2, 2020) (quoting *In re Chevron Corp.*, 749 F. Supp. 2d 141, 164 (S.D.N.Y. 2010)). Here, Plaintiffs appear to be seeking testimony from Mr. Nugent about (1) Defendants'

---

[10] While courts in this Circuit will weigh this factor within the context of how any deposition might disrupt an ongoing relationship between a client and their present counsel, courts will also look back to see what role the attorney played in the discovery that is presently being sought. Courts are particularly concerned with implicating the witness-advocate rule, which might involve an attorney who is presently representing someone suddenly becoming a witness who might need to testify at trial. Although Mr. Nugent was a key figure at the time, the Court finds that, on balance, the fact that there is no ongoing relationship to disrupt weighs in favor of granting the deposition.

denial of Plaintiffs' petitions to extend Blodgett water and sewer districts and (2) Mr. Nugent's involvement in the so-called *quid pro quo* to exchange water and sewer rights for the burial area. But as Town Attorney, Mr. Nugent's knowledge about such topics would inevitably implicate any legal advice he provided as part of his attorney role. Additionally, deposing Mr. Nugent on conversations he had with the Town Supervisor would likely generate many privilege objections, as the attorney-client privilege could cover many of the topics the two discussed. And unlike some of the cited cases here, Plaintiffs do not provide assurances in their papers that they would only be seeking non-privileged material. But even if they had, the risk of running into such material—given the nature of the documents the Court has already reviewed and considering the topics Plaintiffs may wish to explore—runs too deeply into territory where privilege objections may arise.[11]

  Lastly, the fourth factor similarly favors disallowing the deposition. "Courts are often less likely to grant discovery against opposing counsel where the parties have already engaged in significant discovery." *Sec. & Exch. Comm'n v. Contrarian Press*, No. 16-CV-6964 (VSB), 2020 WL 7079484, at *5 (S.D.N.Y. Dec. 2, 2020); *See also KOS Bldg. Grp., LLC v. R.S. Granoff Architects, P.C.*, No. 19CV2918 (PMH)(LMS), 2020 WL 1989487, at *6 (S.D.N.Y. Apr. 24, 2020) (finding that the "late stage of discovery" weighed against allowing the deposition). Here, the parties have already engaged in significant discovery in this case. As of January 5, 2024,

---

[11] Plaintiffs argue that no privilege will be encountered because any privilege has been waived or is subject to the crime-fraud exception. The Court disagrees and addresses these points separately.

the parties entered their seventh Case Management Plan, with all discovery to be completed by April 30, 2024. (ECF No. 63). Because the parties are in this late stage of discovery, this factor weighs against allowing the deposition.

In sum, two of the factors favor allowing the deposition, while two favor disallowing it. Because Courts generally disfavor allowing depositions of attorneys, and Plaintiffs have not persuaded the Court that the factors weigh in their favor, the Court will not order the deposition of Mr. Nugent at this time. But the Court is mindful that the allegations regarding the *quid pro quo*, which are central to Plaintiffs' case, directly implicate a conversation Mr. Nugent had with plaintiffs' counsel. And the Court separately ruled that the notes taken by Mr. Nugent in connection with that phone call must be produced, though in slightly redacted form. Indeed, Mr. Nugent's testimony about what was said in this conversation would not be privileged, but any conversations he had with the Town Supervisor about it would likely veer quickly into privileged territory. Thus, the Court will permit Plaintiffs to serve an interrogatory on Mr. Nugent limited to (1) what was said in his phone conversation with plaintiffs' counsel about the alleged *quid pro quo* offer; (2) who, if anyone, told him to make such an offer; and (3) whether and when the offer was communicated to the Town Supervisor. In this Court's view, the identity of the person who directed that the offer be made to Plaintiffs should not be shielded by privilege just because a lawyer may have been used to communicate it. This will allow Plaintiffs to obtain relevant discovery but avoid the risks inherent with depositions of attorneys discussed above.

To be clear, it is not the Court's intention to cast open the doors to a new set of discovery disputes and privilege objections, especially at this late stage. To that end, Plaintiffs' interrogatory requests must be narrow in scope, and in line with the Court's ruling above. And for his part, Mr. Nugent must be forthcoming in his answers or risk being deposed.

## IV.  Defendant Did Not Waive Any Privilege[12]

In seeking production of the disputed documents and a deposition of Mr. Nugent, Plaintiff argues that "[Defendant] Albra waived the attorney-client privilege when he testified about his discussions with Nugent during his deposition." (ECF No. 76-1 at 8). But the Court disagrees.

Attorney-client privilege may be waived by implication when a client testifies about portions of the attorney-client communication, "when a client places the attorney-client relationship directly at issue, and when a client asserts reliance on an attorney's advice as an element of a claim or defense." *In re County of Erie*, 546 F.3d 222, 228 (2d Cir. 2008) (alterations omitted).[13] "The fundamental proposition governing implied or 'at issue' waivers of attorney-client and other evidentiary

---

[12] Plaintiffs have also argued that the crime-fraud exception applies to make all communications with Mr. Nugent discoverable. (ECF No. 76-1 at 8). But in light of this Court's determination that Plaintiffs are entitled to limited additional discovery from Mr. Nugent about his conversation with Plaintiffs' counsel about the alleged *quid pro quo* offer and whether and when it was discussed with the Town Supervisor, the Court finds it unnecessary to rule on whether the crime-fraud exception applies to make such communications discoverable.

[13] *Accord Wi-LAN, Inc. v. LG Elecs., Inc.*, 684 F.3d 1364, 1370 (Fed. Cir. 2012) ("The doctrine of implied waiver is invoked when a party makes the content of his attorney's advice relevant to some claim or defense in the case.  Even if the party does not expressly disclose the advice received, but only alludes to it, the privilege can be deemed waived by implication.").

privileges is that a party may not affirmatively rely on privileged communications to support a claim or defense and then shield those communications from discovery by its adversary." *United States v. Ghailani*, 751 F. Supp. 2d 498, 501 (S.D.N.Y. 2010); *see In re Grand Jury Procs.*, 219 F.3d at 182 ("[F]airness considerations arise when the party attempts to use the privilege both as 'a shield and a sword.'").[14] Whether a party has impliedly waived attorney-client privilege raises questions of fairness and must be addressed "on a case-by-case basis, and depends primarily on the specific context in which the privilege is asserted." *Erie*, 546 F.3d at 229.[15] "[S]imply because privileged information is relevant to a claim or defense in the case does not give rise to an implied waiver; rather, to forfeit privilege, the party must *rely* on privileged advice from his counsel to make his claim or defense." *Nimkoff Rosenfeld & Schechter, LLP v. RKO Props., Ltd.*, No. 07-cv-7983, 2016 WL 3042733, at *5 (S.D.N.Y. May 24, 2016) (internal quotation marks omitted); *see Erie*, 546 F.3d at 229. Thus, the Court "will not find an at issue waiver merely because privileged information is relevant to the issues being litigated." *Nimkoff*, 2016 WL 3042733, at *5. Rather, an at-issue waiver occurs when the party asserts a claim or defense that he intends to prove by use of the privileged materials or

---

[14] *Accord United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) ("[T]he attorney-client privilege cannot at once be used as a shield and a sword.").

[15] *Accord In re Grand Jury Procs.*, 219 F.3d at 183 ("Whether fairness requires disclosure has been decided by the courts on a case-by-case basis, and depends primarily on the specific context in which the privilege is asserted.").

when the privileged materials are indispensable to that party's claims or defenses. *Id.*[16]

Such is not the case here. At no point do Plaintiffs identify that Albra "testified about the basis of his understanding that his actions were legal," as identified as the key finding of an at-issue waiver in *Erie*. *Barbini v. First Niagara Bank, N.A.*, 331 F.R.D. 454, 462 (S.D.N.Y. 2019). Instead, Plaintiffs merely assert that Albra testified "about his discussion with Nugent during his deposition." Instead, a review of the transcript seems to reveal only one exchange on this topic, where Albra says he "was not aware" that Nugent made an offer to Plaintiffs. (ECF No. 76-6 at 26). This solitary answer does not implicate an understanding as to the legality of any actions Albra took, nor does it place that understanding at the center of any claim or defense in the case. As a result, the Court finds that Defendants did not waive their privilege when Albra testified about his communications with Nugent.[17]

## CONCLUSION

For the reasons above, Plaintiffs' motion to compel discovery is **GRANTED in part and DENIED in part**, consistent with the specific findings in this order.

---

[16] *See also In re Grand Jury Procs.*, 219 F.3d at 182 ("[A] party cannot partially disclose privileged communications . . . to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party."); *Windsor Secs., LLC v. Arent Fox LLP*, 273 F. Supp. 3d 512, 518 (S.D.N.Y. 2017) (explaining that the party must "affirmatively place[] the subject matter of its own privileged communication at issue in litigation").

[17] Although the Court finds that Defendants did not waive privilege as to Mr. Nugent's communications with them, there are a limited set of facts about Mr. Nugent's alleged *quid pro quo* conversation that are not covered by the privilege, as discussed in Section III above.

(ECF No. 76). The Clerk of Court is respectfully directed to terminate the pending motion at ECF No. 76.

**SO ORDERED.**

DATED:   White Plains, New York
         October 11, 2024

_____
VICTORIA REZNIK
United States Magistrate Judge