UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

GLD3, LLC and SNOOK-9 REALTY, Inc.,
Plaintiffs,

v.

AZEM ALBRA, Town Supervisor and Town Board Member of the Town of Fishkill in his official capacity, JACQUELINE BARDINI, as a Town Board Member of the Town of Fishkill in her official capacity, JOSEPH BUONO, as a Town Board Member of the Town of Fishkill in his official capacity, LOUISE DANIELLE, as a Town Board Member of the Town Of Fishkill in her official capacity, KENYA GADSDEN, as a Town Board Member of the Town of Fishkill in her official capacity, the TOWN BOARD OF THE TOWN OF FISHKILL, the TOWN OF FISHKILL, and DOES 1-20.
Defendants.

-----------------------------------------------------------x

**OPINION AND ORDER**

21 CV 11058 (VB)

Briccetti, J.:

Plaintiffs GLD3, LLC, and Snook-9 Realty, Inc., bring this action pursuant to 42 U.S.C. § 1983 against the Town Board of the Town of Fishkill (the "Town Board"); the Town of Fishkill (the "Town"); the Town Supervisor, Azem Albra; Town Board Members Jacqueline Bardini, Joseph Buono, Louise Daniele, Kenya Gadsden; and "Does 1–20." Plaintiffs allege defendants violated their rights under the United States Constitution and analogous New York State law to procedural due process, substantive due process, and equal protection, by delaying various municipal permits and approvals necessary for the plaintiffs to develop their property and by enacting certain legislation that imposed additional conditions and limitations on plaintiffs' proposed development. Plaintiffs also allege a regulatory takings claim in violation of the Fifth Amendment.

Now pending is defendants' motion for summary judgment. (Doc. #103). For the

reasons set forth below, the motion is GRANTED.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331.

## BACKGROUND

The parties have submitted briefs, statements of material facts pursuant to Local Civil Rule 56.1, and declarations with exhibits. These submissions reflect the following factual background.

I. Continental Commons

Plaintiffs own two commercial parcels (the "Property") totaling about ten acres in Fishkill, New York. The Property falls within the boundaries of what is known as the Fishkill Supply Depot, formerly a strategic location for the Continental Army during the Revolutionary War. The Property falls within a 74-acre tract listed on the National Register of Historic Places. In 2007, plaintiffs began planning the development of what they called the Continental Commons within the Property, which included construction of a restaurant, hotel, shops, and a visitor center.

At the southwestern corner of the Property is a burial area which takes up about four tenths of an acre (the "Burial Area"). The Burial Area was discovered in 2007, when an archeological investigation identified seven suspected grave shafts. One grave shaft was confirmed to contain a human burial. Plaintiffs have agreed not to build on the Burial Area, and it has been permanently preserved through a conservation easement. Plaintiffs voluntarily placed a marker in the Burial Area to honor fallen Revolutionary War soldiers and other veterans. To date, there has been no evidence to suggest that the person buried on the Property was a Revolutionary War soldier or that the area was a Revolutionary War burial site.

II. The Town Board

On November 5, 2019, defendants Albra and Daniele were elected to the Town Board with Albra elected as the Town Supervisor. They took office on January 1, 2020. Both campaigned in their respective elections in opposition to the development of Continental Commons. Members of the Town Board including Albra, Daniele, and defendant Bardini (who was already a member of the Board) communicated with Lance Ashworth, president of the Friends of the Fishkill Supply Depot ("FOFSD"), a not-for-profit organization opposing the development of Continental Commons, about their opposition to the project and various strategies to impede it.

III. Initial Development and Approvals

On April 11, 2019, the Fishkill Planning Board ("Planning Board") issued a State Environmental Quality Review Act ("SEQRA") "negative declaration" determining Continental Commons "will not have a significant adverse environmental impact and therefore preparation of an Environmental Impact Statement in not required." (See Doc. #106 ("Randazzo Decl.") Ex. D at 1). The SEQRA negative declaration set forth other approvals required to develop Continental Commons, including: (i) water and sewer agreements/district extensions by the Town Board; (ii) site development plan approval by the Planning Board; (iii) special use permit by the Planning Board; and (iv) water and sewer plan approval by the Dutchess County Department of Health. On December 12, 2019, the Planning Board amended the negative declaration and granted plaintiffs' preliminary site plan approval and special permit use approval for Continental Commons ("conditional site plan approval"). The preliminary site plan approval conditioned the final site plan approval on plaintiffs' compliance with eighteen conditions. (See Doc. #109 ("Riccardulli Decl.") Ex. 38 at 17–20).

IV. Extension of the Blodgett Water and Sewer Districts

As part of the initial approvals, Continental Commons needed to obtain a water and sewer agreement or a district extension of an existing water and sewer district. At an April 17, 2019, Town Board meeting, counsel for the Town Board advised that if the town had capacity and feasibility for the water and sewer districts, it could not deny the petitions. On or about October 30, 2019, plaintiffs filed two petitions to extend the Blodgett water and sewer districts (the "Water and Sewer Districts").

The Town Board held a public hearing regarding the petitions on December 4, 2019. Approval of the petitions at this meeting was important to plaintiffs because the incoming board was openly opposed to the development. The vote on the water and sewer petitions did not go forward that night because plaintiffs' attorney stated she failed to properly notice the hearing.[1] The vote on the petitions was tabled until a December 18, 2019, meeting. This meeting was cancelled due to a lack of quorum. The meeting was rescheduled to December 30, 2019, and was subsequently postponed because Albra sought an injunction preventing the Board from holding the meeting based on the allegation that the then-Town Supervisor exceeded his authority by unilaterally scheduling the meetings prior to the expiration of his term.

After the new board took over in January 2020, the board held public meetings on the Water and Sewer District petitions on January 22, February 5, February 19, and March 4, 2020. There were also public hearings during the Town Board meetings on April 1 and May 27. The Town Board left the public comment period open through June 6, 2020, and plaintiffs responded

[1] Plaintiffs subsequently sued the lawyer and firm who represented them for legal malpractice and breach of fiduciary duty in connection with the land use applications in Dutchess County Supreme Court. See GLD3, LLC, et al. v. Cuddy & Feder LLP, et al., Index No. 2023-51772. (Randazzo Decl. Ex. C).

on June 26, 2020.

Following the public hearings the Town Board also had meetings on September 2 and 16, 2020, to discuss resolutions to approve extensions to the Water and Sewer Districts. On September 16, 2020, the Town Board voted against the extensions, with three votes in favor of disapproving the resolutions and none against. Albra abstained from voting on the resolutions.

On January 15, 2021, plaintiffs filed an Article 78 petition in the Dutchess County Supreme Court alleging the denials were arbitrary and capricious, constituting an abuse of discretion and exceeding the Town Board's legal authority. On September 19, 2022, the court granted the Article 78 petition, annulled the Town Board's resolutions denying the extensions, and remanded to the Town Board with directions to grant the petitions.

V. Zoning Laws

Starting in April 2021, the Town Board began to discuss proposed amendments to zoning laws related to aquifer protection and historic preservation. The Town Board engaged CPL, an engineering firm, to assist in creating a plan around historic and groundwater preservation. In an April 7, 2021, memorandum to the Town Board, Albra wrote the purpose of the proposed zoning laws was "the protection of cultural and historical resources" and "the protection of groundwater and aquifer resources in the Town of Fishkill" in order to ensure health, safety, and wellbeing of its citizens. (Randazzo Decl. Ex. MM at ECF 8, 11)[2].

Liz Axelson of CPL prepared a map identifying historical sites and markers in Fishkill ("Historic Map"), which included references to the Property. On August 11, 2021, the Town Board discussed amendments to the town code to (i) "provide aquifer protection to preserve

---

[2] "ECF ___" refers to page numbers automatically assigned by the Court's Electronic Case Filing system

drinking water quality for the future," and (ii) "adopt historical preservation measures to protect the Town's vast historical and cultural resources" based on the Historic Map. (See Randazzo Decl. Ex. RR at 7, 28).

On September 15, 2021, the Town held a public meeting on the proposed zoning laws. Albra stated the purpose of the historic preservation code amendments (the "Historic Law") was to protect the residents of Fishkill and to transfer power from the developers to the citizens. Axelson presented and explained that the Historic Law would regulate "other structures, if any, designated as historically significant by the Town Board of the Town of Fishkill . . . . [I]t would also address land disturbance on a site or parcel identified as a historic site, a former cemetery, or burial site, a potential archaeological site, a site identified [by] the New York State Historic Preservation Office . . . or a site that is located in or adjacent to an area designated as sensitive for archaeological sites." (Doc. #115 ¶ 109). During her presentation, Axelson did not refer to plaintiffs or Continental Commons, but noted the designation of "Veterans' Fishkill Supply Depot Site and soldiers burial ground, [as] sort of one combined site." (Doc. #115 ¶ 108).

Plaintiffs allege, and defendants dispute, that the agenda packet of the September 15 meeting was the first time the Town published drafts of the code amendments and the August 3 draft of the Historic Map. Plaintiffs also allege, and defendants also dispute, that "notwithstanding the proposed regulation and designation of the Property, the Town did not notify them of the proposed code amendments or the designation." (Doc. #115 ¶ 106).

On September 22, 2021, counsel for plaintiffs emailed the Town Board's attorney expressing concerns as to why the word "veteran" was being used to refer to the Fishkill Supply Depot and the Property. Counsel also requested to review the underlying materials used in designating the Property as they did not believe it was correctly designated. The email was

forwarded to Albra and Axelson, but there is no response in the record. On September 22, 2021, Albra's secretary emailed Axelson stating, "The Supervisor would like the area at the corner of Van Wyck Lake Road and Route 9 [referring to the Property] identified in your Historical Preservation Map and Law, labeled 'Revolutionary War Soldiers Graves.'" (Doc. #115 ¶ 116).

A. The Dutchess Mall and Deer Crossing Sites

On September 21, 2021, Albra received an email from the Dutchess Mall representatives, another development in the area, expressing concern about the effect of the proposed zoning laws. The email noted "[o]bviously we are not historic or cultural." (Doc. #115 ¶ 119). The Dutchess Mall site was also on the National Register of Historic Places. Albra emailed Axelson stating: "I have 2 private consultants with concerns over the Dutchess Mall site. I want this site developed and do not want anything to slow that down. Please review the below emails and let me know if their concerns are valid or not." (Doc. #115 ¶ 120). He emailed again on September 30, 2021, stating "[a]ny updates on these questions, I don't want anything that will delay any type of construction on the Dutchess Mall Site." (Id. ¶ 121). The communications between Axelson and Albra about the Dutchess Mall site were not included in the record for the Historic Law.

On September 30, 2021, Axelson and Albra went on site visits to identify other historic sites and markers. Among the sites they visited was Deer Crossing, the confirmed location of a 1776 Revolutionary War hospital marker. Neither the site nor the marker was included on the Historic Map.

B. Finalizing the Historic Map

The Town Board held a public hearing on October 20, 2021. The Board discussed the Historic Map, which referred to the Property as both the "Fishkill Supply Depot Site" and the

"Veterans of the Fishkill Supply Depot and Area of Revolutionary Soldiers' Graves." (Doc. #115 ¶ 131).

Plaintiffs' counsel attended the October 20 public hearing and made comments. (Doc. #111 ¶ 140). Counsel and Domenico Broccoli, plaintiffs' principal, explained plaintiffs were the ones who placed a historical marker on their property to honor veterans of the Revolutionary War, but that the marker did not mark the location of a Revolutionary War burial site or graves. Broccoli stated that if the marker he placed on the Property was the basis for the Property's inclusion in the Historic Law, he would remove the marker from the Property. (Docs. ##111 ¶ 136; 115 ¶ 135).

Plaintiffs' counsel also "provided written comments to the Town Board requesting that the Town Board delay voting on the proposed laws due to (1) the Town's failure to provide impacted property owners with an opportunity to be heard; and (2) the Town's failure to consider the record related to the potential impact by Continental Commons to historical and environmental resources." (Doc. #115 ¶ 132). Plaintiffs also objected to the inclusion of the Property on the Historic Map, because they alleged the designation was falsely based on the misunderstanding that the marker plaintiffs placed on their property marked the location of Fishkill Supply Depot artifacts and/or the burials of Revolutionary War soldiers. (Riccardulli Decl. Ex. 24).

After plaintiffs' representatives testified about their research into the grave sites, Axelson suggested the Town amend the Historic Map to remove the reference to Revolutionary War graves, notwithstanding the unresolved question of whether the Property contained such graves. (Doc. #115 ¶ 138). That night the Town Board adopted the Historic Zoning Law and Aquifer Protection Law (collectively "Zoning Laws"). The Town Board adopted the Historic Map on

May 3, 2023, as part of an amendment to the Town's Comprehensive Plan. The Town stated its purpose and intent in enacting the Historic Law was:

> It is in the best interests of the Town of Fishkill that recognized historic resources be protected for the continuing use and enjoyment of future residents within the community. The Town of Fishkill specifically finds that many of these vital and irreplaceable historic resources have heretofore been afforded recognition, but not protection, through their inclusion, or deemed eligibility for inclusion, on the National Register of Historic Places. The Town further finds that preservation of Fishkill's historic architectural character will foster civic pride in the beauty and architectural achievements of the past and result in economic benefits to Fishkill by uniformly preserving its heritage and distinctive character.

(Randazzo Decl. Ex. TT at ECF 19).

In her deposition, Axelson explained her investigation in preparation of the Historic Map was limited to a review of information contained on Wikipedia and the Historic Marker Database[3], and that she did not attempt to verify the factual information she relied on. Axelson testified she did not know, "when she designated the Fishkill Supply Depot site . . . [if she was] identifying a single piece of property or the entire 75 acres designated by the National Registry of Historic Places." (Riccardulli Decl. Ex. 26 at Tr. 158). At the time she added the Property to the map, she was not aware of the Planning Board's more than four-year review of Continental Commons; or that the Planning Board adopted negative declarations finding that the project would not have an adverse impact on historical and archeological resources.

The Town Board also held a public hearing during its meeting on October 20, 2021, concerning the Aquifer Protection Law. The purpose of this amendment was to "protect the public health, safety, and general welfare by preserving and maintaining the quality and quantity

---

[3] The Historical Marker Database is a volunteer created website that "contains photographs, inscription transcriptions, marker locations, maps, additional information and commentary, and links to more information. Anyone can add new markers to the database and update existing marker pages with new photographs, links, information and commentary." (Doc. #115 ¶ 145).

of the Town's major aquifer and groundwater resources in order to ensure an adequate and safe potable water supply for present and future residents, employees, and the general public." (Doc. #106-71 at 222). The amended section also noted that "[o]ther land uses and structures and improvements associated with land development may also present threats to aquifer and groundwater quality and quantity such as impervious surfaces, which are regulated in this and other chapters of the Code of the Town of Fishkill." (Id. at 222–23).

Plaintiffs assert that Broccoli was contacted by a member of the committee to update the Town's comprehensive plan, on behalf of Albra, to negotiate a deal in which plaintiffs would gift the Burial Area to the Town in exchange for the water and sewer extension. (Doc. # 115 ¶ 148–150). Broccoli allegedly rejected this proposal. Plaintiffs also assert that after the Town Board denied plaintiffs' petitions to extend water and sewer to the Property, the Town Board's attorney offered that the Town Board would extend water and sewer to the Property if plaintiffs agreed to donate the Burial Area to the Town, agree not to develop their remaining property for ten years and agree to a monitor during construction of Continental Commons. (Id. ¶ 151).

VI. The Town Commemorates the Property

Plaintiffs make various additional allegations about the Town's adoption of street names on the Property to demonstrate its historical significance and commemorating part of the Property as a Revolutionary War burial ground, despite the lack of evidence of Revolutionary War burials on the Property. (See Doc. #115 ¶¶ 153–72).

VII. Final Approvals

On December 29, 2021, plaintiffs filed an Article 78 petition in Dutchess County Supreme Court challenging the Town's adoption and enactment of the Zoning Laws. On March 16, 2022, the Town Board passed a resolution amending the Zoning Laws, to exempt all

properties for which a completed application for site plan approval, subdivision approval, or grant of a special use permit was outstanding—meaning the amended Zoning Laws did not apply to Continental Commons. Two acres of the Property remained subject to the Zoning Laws after the amendment.

On October 5, 2022, the Town Board passed resolutions granting plaintiffs' petitions for extensions of the Water and Sewer Districts. On October 8, 2025, the Dutchess County Supreme Court dismissed plaintiffs' Article 78 petition because plaintiffs lacked standing to assert their claim challenging the Historic Law. Plaintiffs had already withdrawn the portions of their petition challenging the Aquifer Protection Law. (See Randazzo Decl. Ex. III)

The Planning Board granted conditional final approval of the Continental Commons site development plan and special use permit on December 18, 2023. The Planning Board issued final site plan approval on April 16, 2025. To date, construction has not begun on the Property.

**DISCUSSION**

I. Standard of Review

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).[4]

A fact is material when it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

---

[4] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010). It is the moving party's burden to establish the absence of any genuine issue of material fact. Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party fails to make a sufficient showing on an essential element of its case on which it has the burden of proof, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. at 323. If the non-moving party submits "merely colorable" evidence, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249–50. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . and may not rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011). "[T]he mere existence of a scintilla of evidence" supporting the non-moving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for him. Dawson v. Cnty. of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). If there is any evidence from which a reasonable inference could be drawn in the non-movant's favor on the issue on which summary judgment is sought, summary judgment is improper. Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82–83 (2d Cir. 2004). Bald assertions, completely unsupported by admissible evidence, are not sufficient to overcome summary judgment. Carey v. Crescenzi,

923 F.2d 18, 21 (2d Cir. 1991).

## II. Substantive Due Process Claim

Plaintiffs claim defendants infringed on their substantive due process rights by (i) initially denying and delaying plaintiffs' petitions to extend the Water and Sewer Districts, and (ii) enacting Zoning Laws which limited plaintiffs' use of their property. Plaintiffs argue these actions were motivated by "political animus" and defendants' desire to block the development of Continental Commons. (Doc. #110 at 1).

For the reasons detailed below, the Court finds plaintiffs fail as a matter of law to make a showing of substantive due process violations.

### A. Claim Related to Denying and Delaying Plaintiffs' Petitions to Extend the Water and Sewer Districts

Defendants argue plaintiffs did not have a protected property interest in extensions of the Water and Sewer Districts sufficient to sustain a substantive due process claim.

The Court agrees.

"To prevail on its claim that it was denied a property right by conduct that violated the substantive due process standards of the Fourteenth Amendment, [a plaintiff] must show (1) that it had a valid property interest in the granting of the petition, and (2) that the defendants infringed that property interest in an arbitrary or irrational manner." Clubside, Inc. v. Valentin, 468 F.3d 144, 152 (2d Cir. 2006). For the Court to find a valid property interest, a party must establish a legitimate claim of entitlement. Zahra v. Town of Southold, 48 F.3d 674, 680 (2d Cir. 1995). A legitimate claim of entitlement exists when, under applicable state law, absent the alleged denial of due process, there is either a certainty or a very strong likelihood that the application would have been granted. Walz v. Town of Smithtown, 46 F.3d 162, 168 (2d Cir. 1995). "As a general rule, entitlement turns on whether the issuing authority lacks discretion to

deny the permit, i.e., is required to issue it upon ascertainment that certain objectively ascertainable criteria have been met." Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 504 (2d Cir. 2001). The question of whether an applicant has a property interest is normally a matter of law for the court. Clubside, Inc. v. Valentin, 468 F.3d at 153.

New York Town Law Sections 190 and 194 vest a town board with the power to govern the establishment and extension of municipal-improvement districts, including sewer and water districts. N.Y. Town Law § 190 (McKinney 2004). The Second Circuit has explicitly held "the statutory authority [pursuant to New York Town Law Section 194(1)] to consider whether a proposed extension or creation of a municipal improvement district is in the public interest vests [a town planning board] with sufficient discretion to defeat [plaintiffs'] claim to a constitutionally protected property interest in extension of the sewer district." Clubside, Inc. v. Valentin, 468 F.3d at 157. Thus, a developer does not have a constitutionally protected property interest in an application for extension of a water or sewer district. Id.

Plaintiffs do not grapple with the holding in Clubside. Rather, plaintiffs argue they had a clear entitlement to the extension because, absent the alleged due process violation, their application would have been granted. (Doc. #110 (citing Sullivan v. Town of Salem, 805 F.2d 81 (2d Cir. 1986)). However, Clubside makes clear there was more than a theoretical possibility of discretionary action by the Town Board in the extension of the Water and Sewer District such that plaintiffs were not clearly entitled to a permit. 486 F.3d at 157. Plaintiffs offer no explanation besides their own assertion that their application would have been granted with certainty absent a due process violation. (See Doc. #110 at 5–7).[5] Plaintiffs' unsupported

---

[5] Even to the extent plaintiffs offer the Town Board attorney's comments that the petition would be granted if the Town had capacity or feasibility, this evidence is unavailing. These statements alone without proof that the Town did have feasibility or capacity, which are not in

assertion is insufficient in light of the holding in Clubside. Accordingly, plaintiffs had no clear entitlement to the extension of the Water and Sewer Districts.

Plaintiffs argue alternatively that they had a vested property interest in the extensions because at the time the petitions were denied, plaintiffs had already obtained conditional site plan approval from the Planning Board; had already incurred substantial expenses related to the multi-year review; and had immediately begun to satisfy the conditions required to obtain final site plan approval. (Doc. #110 at 5–6).

It is true that a vested property interest may arise when a landowner demonstrates a commitment to the purpose for which a permit was granted by effecting substantial changes and incurring substantial expense to further the development. Town of Orangetown v. Magee, 88 N.Y.2d 41, 47–48 (N.Y. 1996). However, "neither the issuance of a[n] [approval], nor the landowner's substantial changes and expenditures, standing alone, will establish a vested right." Frooks v. Town of Cortlandt, 997 F. Supp. 438, 450 (S.D.N.Y. 1998), aff'd, 182 F.3d 899 (2d Cir. 1999). Rather, the plaintiffs must establish they relied on the municipal board's approval to the extent that the board's action "result[ed] in serious loss rendering the improvements essentially valueless." Id. at 451; see, e.g., Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 784–85 (2d Cir. 2007) (finding plaintiffs established an issue of fact as to whether they had a vested property right because plaintiffs made $2.3 million in improvements and suffered personal and corporate bankruptcy after the town's subsequent restriction of the permit's parameters).

Here, plaintiffs argue only that they "incurred . . . substantial expenses,"[6] are committed

the record, do not demonstrate plaintiffs had a clear entitlement to the approvals, especially in light of the holding in Clubside.

[6] Without listing any additional supporting facts or allegations, plaintiffs assert the substantial expenses amount is "more than $13M in damages." (Doc. #110 at 1).

to the development of the Continental Commons, and that the denial of the water and sewer petitions was "destructive of plaintiffs' property interest." (Doc. #110 at 6). Merely reciting the elements of a vested property right does not meet plaintiffs' burden of establishing such a right. Frooks v. Town of Cortlandt, 997 F. Supp. at 451 ("[P]laintiffs nowhere allege, or even mention, any improvements made under the 1981 certificate that have become 'valueless.' Nor do plaintiffs state any loss, aside from unsubstantiated allegations in the Complaint . . . . Such allegations, standing alone, will not suffice on a motion for summary judgment."). Thus, although plaintiffs undertook a four-year review and began to satisfy the conditions required by the Planning Board, plaintiffs do not put forth any facts demonstrating their investment was rendered essentially valueless.

"Because [plaintiffs] have not shown that they had a cognizable property interest for purposes of the substantive due process clause it is unnecessary to reach the question of whether the Town's actions were arbitrary or irrational." O'Mara v. Town of Wappinger, 485 F.3d 693, 700 (2d Cir. 2007).

Accordingly, summary judgment must be granted on plaintiff's substantive due process claim premised on the Water and Sewer Districts.

B. Claim Based on Enacting Zoning Laws Which Limited Plaintiffs' Use of Their Property

Defendants argue the Zoning Laws did not violate plaintiffs' substantive due process rights because the Zoning Laws were a valid exercise of the Town's zoning powers.

The Court agrees.

"In zoning dispute cases, the principle of substantive due process assures property owners of the right to be free from arbitrary or irrational zoning actions." Brady v. Town of Colchester, 863 F.2d 205, 215 (2d Cir. 1988). Generally, zoning restrictions do not violate substantive due

process rights unless they are "clearly arbitrary and unreasonable, having no substantial relation to public health, safety, morals or general welfare." Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 395 (1926). "Government regulation of a landowner's use of his property is deemed arbitrary or irrational, and thus violates his right to substantive due process, only when government acts with no legitimate reason for its decision." Southview Assoc., Ltd. v. Bongartz, 980 F.2d 84, 102 (2d Cir. 1992). "In assessing [plaintiffs'] claims, we are mindful of the general proscription that federal courts should not become zoning boards of appeal to review nonconstitutional land use determinations." Brady v. Town of Colchester, 863 F.2d at 215.

Defendants assert the Zoning Laws were enacted to preserve and protect historic sites and structures and to preserve and maintain the quality and quantity of the Town's aquifer and groundwater resources. The intent behind the Zoning Laws was discussed during Town Hall meetings, in memoranda prepared in advance of those meetings, and in the text of the legislation. (See, e.g., Doc. #111 ¶¶ 109, 111, 112, 149, 150, 157, 160; Doc. #106-71 at 100).

Historic preservation and conservation of resources are reasonable and legitimate reasons for Zoning Laws. See Penn Cent. Transp. Co. v. City of New York, 438 U.S. 104, 109 n.5 (1978) ("[I]t is the public policy of the State of New York to preserve structures and areas with special historical or aesthetic interest or value and authorizes local governments to impose reasonable restrictions to perpetuate such structures and areas."); Kittay v. Giuliani, 112 F. Supp. 2d 342, 352 (S.D.N.Y. 2000) ("Courts have repeatedly upheld land use restrictions based on environmental concerns," including those intended to regulate the water supply).

In fact, plaintiffs do not actually argue the Zoning Laws were arbitrary or unreasonable. (See Doc. #110 at 7–8). Plaintiffs' only argument in favor of their substantive due process claim is that the amendments imposed additional restrictions on the Property, limiting the manner in

which it could be used. (Id. at 7). Plaintiffs provide no case law—nor is the Court aware of any—suggesting these limitations alone could render the Zoning Laws arbitrary or unreasonable.[7]

Accordingly, summary judgment must be granted on plaintiff's substantive due process claim premised on the Zoning Laws.[8]

III. Procedural Due Process Claim

Plaintiffs argue they were denied procedural due process because defendants failed to provide notice and an opportunity to be heard on the Water and Sewer District extensions and on the Zoning Laws.

To prove a violation of procedural due process rights, a plaintiff must "first identify a property right, second show that the [government] has deprived him of that right, and third show that the deprivation was effected without due process." Local 342, Long Island Pub. Serv. Emps., v. Town Bd. of Huntington, 31 F.3d 1191, 1194 (2d Cir. 1994). Thus, "a plaintiff must prove that he or she was deprived of an opportunity granted at a meaningful time and in a meaningful manner for a hearing appropriate to the nature of the case." Brady v. Town of

[7] To the extent plaintiffs meant to argue the Zoning Laws are unreasonable or arbitrary because the Property's inclusion on the Historic Map was premised on an incorrect assumption that the Property contained Revolutionary War soldiers' graves, that argument would be unpersuasive. The Property is located within the Fishkill Supply Depot National Register of Historic Place site. Indeed, plaintiffs have acknowledged the historic nature of the Property through its naming ("Continental Commons") and design and have agreed to have a conservation easement on the Property. It would have been reasonable to include the Property on the Historic Map in an effort to preserve historic sites, and it could not be said that the "government acted with no legitimate reason for its decision." Southview Assoc., Ltd. v. Bongartz, 980 F.2d 84, 102 (2d Cir. 1992).

[8] Plaintiffs' substantive due process claim premised on the Zoning Laws independently fails because the Zoning Laws were never applied to the Property and their claim is not ripe. See infra IV.B.

Colchester, 863 F.2d at 211.

A. Claim Related to Denying and Delaying Plaintiffs' Petitions to Extend the Water and Sewer Districts

Defendants argue plaintiffs' procedural due process claim premised on extensions of the Water and Sewer Districts fails because plaintiffs have no constitutionally protected property interest.

For the reasons stated above, the Court agrees. See supra II.A. Plaintiffs do not have a constitutionally protected property interest in an application for extension of a water or sewer district, nor do they show their investment was rendered valueless by the denial and delay of their petitions.

B. Claim Based on Enacting Zoning Laws Which Limited Plaintiffs' Use of Their Property

Defendants argue plaintiffs' procedural due process rights were not violated because they had an adequate post-deprivation remedy—the Article 78 proceeding.

The Court agrees.

"[T]he Second Circuit has . . . held on numerous occasions that where, as here, a party sues the state and its officials and employees for the arbitrary and random deprivation of a property or liberty interest, an Article 78 proceeding is a perfectly adequate post deprivation remedy." Ahmed v. Town of Oyster Bay, 7 F. Supp. 3d 245, 254 (E.D.N.Y. 2014) (citing Grillo v. N.Y.C. Transit Auth., 291 F.3d 231, 234 (2d Cir. 2002)). However,

> [w]hen reviewing alleged procedural due process violations, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees. In the latter case, the Due Process Clause of the Fourteenth Amendment is not violated when a state employee intentionally deprives an individual of property or liberty, so long as the State provides a meaningful postdeprivation remedy. When the deprivation occurs in the more structured environment of established state procedures, rather than random acts, the availability of postdeprivation procedures will not, ipso facto,

satisfy due process.

Hellenic Am. Neighborhood Action Comm. v. City of New York, 101 F.3d 877, 880 (2d Cir. 1996). "In the land-use context, courts in this Circuit have repeatedly held that the availability of an Article 78 proceeding in state court is a post-deprivation remedy that satisfies procedural due process." Ariz. Hudson Valley LLC v. Allen, 2023 WL 3936640, at *5 (N.D.N.Y. June 9, 2023).

Plaintiffs argue the Article 78 proceedings were inadequate to overcome the Town Board's pattern of wrongdoing because the decisions were made as part of a larger scheme by defendants to frustrate and delay the development of Continental Commons. The cases plaintiffs rely on for the proposition that other "courts faced with an intractable scheme to frustrate and delay an individual's due process rights in the context of zoning and other planning disputes have explicitly recognized that Article 78 is inadequate to overcome the local authorities' pattern of wrongdoing" are inapposite and are thus insufficient to show the Article 78 proceedings were not a meaningful post-deprivation remedy. (Doc. #110 at 11).

In Koncelik v. Town of East Hampton, the court denied a motion to dismiss a procedural due process claim because "although plaintiffs timely and successfully availed themselves of the Article 78 proceeding . . . , their plans to develop their property [we]re still being delayed" by pending appeals. 781 F. Supp. 152, 158 (E.D.N.Y. 1991). Similarly, in Acorn Ponds v. Village of North Hills, the plaintiff obtained relief in an Article 78 proceeding when a judge directed a zoning and appeals board to conduct various inspections. 623 F. Supp. 688, 690–91 (E.D.N.Y. 1985). The board in that case subsequently refused to provide the relief directed by the judge, and the plaintiff successfully alleged the board's resistance constituted a denial of due process. Id.

There are no analogous allegations here. Plaintiffs do not challenge the failure to

implement final relief on the merits ordered through an Article 78 proceeding. After plaintiffs filed their Article 78 petition to annul the Zoning Laws, the Town amended the Zoning Laws such that the provisions therein did not apply to Continental Commons. (Doc. #171). This in itself demonstrates that the Article 78 proceeding here was a post-deprivation remedy that satisfied procedural due process. Further, unlike Koncelik, there are no further delays alleged related to the Zoning Laws.

Plaintiffs also argue the Article 78 proceedings were insufficient because defendants limited the record in those proceedings to exclude evidence of bad faith. Specifically, plaintiffs allege the record did not include documents related to "the enactment of the Historic Law, including Albra's direction to CPL to include Plaintiffs' property as historic; Albra's direction to CPL to exclude the Dutchess Mall from the Historic Law; and the Planning Board's review of the project resulting in a negative declaration." (Doc. #110 at 10 (citing Doc. #115 ¶¶ 117, 143)). However, plaintiffs cite no evidence in the record for the proposition that these materials were not made available in the Article 78 proceeding. Plaintiffs' citations are to their own attorney's affirmation and nevertheless do not support the idea that these materials were intentionally left out of the record. Regardless, the Court is not persuaded that this undermined the Article 78 proceedings in any way. Plaintiffs withdrew their Article 78 challenge to the Aquifer Protection Law, and their challenge to the Historic Preservation Law was dismissed by the Dutchess County Supreme Court for lack of standing. (See Randazzo Decl. Ex. III). Plaintiffs do nothing to show this allegedly excluded evidence would have altered the Supreme Court's outcome on standing.

Accordingly, defendants' summary judgment motion on the procedural due process claim

must be granted.[9]

IV. Equal Protection Claim

Defendants argue plaintiffs' equal protection claim is without merit because (i) plaintiffs fail to identify any similarly situated comparators and (ii) because the Zoning Laws were not applied to or enforced against plaintiffs, such that the claim is not ripe.

As to the Water and Sewer District extensions, the Court agrees with defendants that plaintiffs have offered no similarly situated comparators. However, the Court finds there is a material issue of fact as to whether plaintiffs have identified similarly situated comparators for the enactment of the Zoning Laws. Nevertheless, the Court agrees with defendants that plaintiffs fail to make out a claim and that plaintiffs' claim is not ripe.

Although "the Equal Protection Clause is most commonly used to bring claims alleging discrimination based on membership in a protected class," a plaintiff who does not allege membership in a protected class may, nonetheless, bring a "class of one" equal protection claim. Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005), overruled on other grounds by Appel v. Spiridon, 531 F.3d 138 (2d Cir. 2008). "A class-of-one claim exists where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Analytical Diagnostic Labs, Inc. v. Kusel, 626 F.3d 135, 140 (2d Cir. 2010).

A. Similarly Situated Comparators

To succeed on a class-of-one claim, a plaintiff must establish that "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree

---

[9] Plaintiffs' substantive due process claim premised on the Zoning Laws independently fails because the Zoning Laws were never applied to the Property and their claim is not ripe. See infra IV.B.

that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." Clubside, Inc. v. Valentin, 468 F.3d at 159. Thus, there must be "an extremely high degree of similarity" between plaintiffs and their comparators. Fortress Bible Church v. Feiner, 694 F.3d 208, 222 (2d Cir. 2012). Plaintiffs "must demonstrate that they were treated differently than someone who is prima facie identical in all relevant respects." Nielson v. D'Angelis, 409 F.3d at 104 (citing Purze v. Village of Winthrop Harbor, 286 F.3d 452, 455 (7th Cir. 2002)). This requirement is rigorously enforced "in the land-use context because zoning decisions will often, perhaps almost always, treat one landowner differently from another." Beard v. Town of Monroe, 666 F. App'x 62, 65 (2d Cir. 2016).

Plaintiffs offer no comparators as to the Water and Sewer District petitions and provide no detail regarding any other property that petitioned for an extension. Accordingly, plaintiffs fail to make out an equal protection claim premised on the Water and Sewer District petitions.

As to the enactment of the Zoning Laws, plaintiffs reference two proposed comparators—the Dutchess Mall site and the Deer Crossing site. First, Deer Crossing is the confirmed location of a 1776 Revolutionary War hospital marker. (Doc #115 ¶ 100). Neither Deer Crossing nor the marker were included on the Historic Site Map. (Id. ¶ 101). Plaintiffs provide no additional details about that site that would allow the Court to reach the conclusion that the two sites are prima facie identical. Without knowing information related to that site, a rational jury could not find Deer Crossing is an appropriate comparator for Continental Commons.

With respect to the Dutchess Mall site, this comparator is similar to Continental Commons in that both sites fall within the National Register of Historic Places. (Doc. #115 ¶ 23;

Doc. #110 at 14). Indeed, in the Town Board's statement of intent for enacting the Local Law Regarding Historical Structures, the Board stated, "many of these vital and irreplaceable historic resources have heretofore been afforded recognition, but not protection, through their inclusion, or deemed eligibility for inclusion, on the National Register of Historic Places." (Doc. #111 ¶ 149). From this evidence, a rational jury could find the Dutchess Mall site is an appropriate comparator for Continental Commons, and that Continental Commons was treated differently for impermissible reasons.

Although Continental Commons—unlike the Dutchess Mall—was included on the Historic Site Map, the inference that defendants' discriminatory animus is the only reason these properties were treated differently is bolstered by Albra's emails to Axelson stating "I have 2 private consultants with concerns over the Dutchess Mall site. I want this site developed and do not want anything to slow that down" and "I don't want anything that will delay any type of construction on the Dutchess Mall Site." (Riccardulli Decl. Ex 20 at 2–3). From these emails, a rational jury could infer that Continental Commons's inclusion on the Historic Site Map—as compared to the Dutchess Mall's exclusion—was not based on a legitimate government policy, but rather intentional disparate treatment. Analytical Diagnostic Labs, Inc. v. Kusel, 626 F.3d at 143.

B. Ripeness of Zoning Laws Claim

However, regardless of whether similarly situated comparators exist as to the Zoning Laws enactment, the equal protection claim fails because plaintiffs do not show the Zoning Laws were ever applied to or enforced against them. "This Court has generally recognized three types of equal protection violations: (1) a facially discriminatory law; (2) a facially neutral statute that was adopted with a discriminatory intent and applied with a discriminatory effect . . . ; and (3) a

facially neutral law that is enforced in a discriminatory manner." Chabad Lubavitch of Litchfield County, Inc. v. Litchfield Historic Dist. Comm'n, 768 F.3d 183, 199 (2d Cir. 2014). Plaintiffs do not allege the Zoning Laws were facially discriminatory, thus they must show the laws were applied or enforced in a discriminatory manner.

Plaintiffs' claim fails because the Zoning Laws were never applied to or enforced against them. The Town enacted the Zoning Laws on October 20, 2021. At that time, plaintiffs had already been granted a SEQRA negative declaration and preliminary site plan approval. There was no action taken against the Property between October 20, 2021, and March 16, 2022, when the Town amended the Zoning Laws to "exempt all properties for which a completed application site plan approval, subdivision approval, or grant of a special use permit was outstanding on the effective date" of the Zoning Laws. (Randazzo Decl. Ex. YY). The effect of this was to exempt Continental Commons from the Zoning Laws. Plaintiffs do not dispute that the Zoning Laws did not apply to Continental Commons following this amendment.

Plaintiffs point to the two undeveloped acres of the Property, which are not exempt from the Zoning Laws because of the amendments, to show the Zoning Laws still apply to the Property. However, these claims are not ripe because plaintiffs never applied for a variance. The final-decision requirement "requires the land developer to obtain a final, definitive position as to the application of the relevant zoning laws to the property from the municipal entity responsible for those laws." Congregation Rabbinical College of Tartikov, Inc. v. Pomona, 915 F. Supp. 2d 574, 597 (S.D.N.Y. 2013). "In practice, this means that ripeness is conditioned on the property owner submitting at least one meaningful application for a variance . . . even where, as here, her plans for [their] property were stymied by an intervening change in local law." Mills Pond Group, LLC v. Town of Smithtown, 2025 WL 1720472, at *1 (2d Cir. 2025).

Any procedural due process claim premised on those two acres of land is not ripe because there has been no final decision. Plaintiffs have yet to submit a single formal application for a variance as to those two acres of land.

To be sure, "a plaintiff in a land use case may be excused from obtaining a final decision if pursuing an appeal to a zoning board of appeals or seeking a variance would be futile," such as when an agency "has dug in its heels and made clear that all such applications will be denied." Bloomingburg Jewish Educ. Ctr. v. Vill. of Bloomingburg, N.Y., 111 F. Supp. 3d 459, 479 (S.D.N.Y. 2015). "But to invoke this futility exception, a plaintiff must demonstrate: (1) "the inevitability of refusal of their application, taking into consideration factors such as the defendants' hostility, delay and obstruction; and (2) that they have filed at least one meaningful application." Id. Plaintiffs have not done so. In fact, plaintiffs did not directly address the ripeness issue in their briefing or attempt to invoke the futility exception. Ultimately, plaintiffs' failure to file at least one meaningful application as to their two acres dooms their procedural due process claim.[10]

At bottom, even if there were similarly situated properties that were treated differently than Continental Commons in the initial development of the law, summary judgment must be granted on the equal protection claim because the Zoning Laws were never applied to the Property and plaintiffs' claim is not ripe.

---

[10] Defendants argue plaintiffs are collaterally estopped from relitigating these issues because plaintiffs' Article 78 challenge to the historic preservation law was dismissed by the Dutchess County Supreme Court for lack of standing. (Doc. #104 at 17). The Court does not need to reach the collateral estoppel issue because for the reasons detailed above the Zoning Laws were never applied to the Property and their claim is not ripe.

V. Failure to Oppose Motion as to Takings Claim and Individual Liability

Defendants moved for summary judgment on plaintiffs' Fifth Amendment regulatory takings claim and on the claims against the individual defendants in their official capacities. In their opposition, plaintiffs failed to address the arguments on those two points in any way. Accordingly, the Court infers the takings claim and the claims against the individual defendants in their official capacities are abandoned. Jackson v. Fed. Exp., 766 F.3d 189, 198 (2d Cir. 2014) ("[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition [to a motion for summary judgment] that relevant claims or defenses that are not defended have been abandoned").

VI. Conspiracy Claim

Defendants argue summary judgment should be granted on plaintiffs' Section 1985 and 1986 claim because there is no underlying constitutional violation.

The Court agrees.

To withstand a motion for summary judgment on a civil conspiracy claim, a plaintiff must present evidence establishing three essential elements of the claim: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999).

Here, summary judgment must be granted on plaintiffs' due process, equal protection, and takings claims. Thus, no unconstitutional injury was inflicted on plaintiffs. See Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 119 (2d Cir. 1995) ("[A] plaintiff alleging a § 1983 conspiracy claim must prove an actual violation of constitutional rights.").

VII. State Law Claims

Pursuant to 28 U.S.C. § 1367(c), having dismissed the federal claims in this case over which it has original jurisdiction, the Court declines to exercise supplemental jurisdiction over plaintiffs' remaining state-law claims. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine—judicial economy, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.").

**CONCLUSION**

The motion for summary judgment is GRANTED.

The Clerk is instructed to terminate the motion (Doc. #103) and close this case.

Dated: July 13, 2026
White Plains, NY

SO ORDERED:



Vincent L. Briccetti
United States District Judge